Mark F. Anderson (SBN 44787)
Andrew J. Ogilvie (SBN 57932)
Anderson, Ogilvie & Brewer LLP
235 Montgomery Street, Suite 914
San Francisco, CA 94104
Ph: (415) 651-1951
Fax: (415) 500-8300
mark@aoblawyers.com

Attorneys for Plaintiffs Racquel L. Vogus and Trenton D. Vogus

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Racquel L. Vogus and Trenton D. Vogus,

    Plaintiffs,

v.

Experian Information Solutions, Inc.;
ConsumerInfo.com, Inc.
Quizzle LLC;
Trans Union LLC; and
TransUnion Interactive, Inc.;

    Defendants.

Case No.

COMPLAINT
CV 13 2252

(Fair Credit Reporting Act
15 USC § 1681 et seq)

DEMAND FOR JURY TRIAL

**Preliminary Statement**

1. This is an action for damages by Racquel L. Vogus and Trenton D. Vogus against Experian Information Solutions, Inc.; ConsumerInfo.com, Inc.; Quizzle LLC; Trans Union, LLC; TransUnion Interactive, Inc. for violations of the Fair Credit Reporting Act, 15 USC §1681 *et seq.*

## The Parties

2. Plaintiffs, Racquel L. Vogus and Trenton D. Vogus, husband and wife, are residents of Longmont, Colorado. They formerly were residents of Clovis, CA.

3. Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business in Costa Mesa, CA.

4. Defendant ConsumerInfo.com, Inc., (ConsumerInfo.com) is a California corporation and a wholly-owned subsidiary of defendant Experian Information Solutions, Inc.

5. Defendant Quizzle LLC ("Quizzle") is a Michigan limited liability company with its principal place of business in Bingham Farms, Michigan.

6. Defendant Trans Union, LLC ("TU") is a Delaware limited liability company with its principal place of business in Chicago, IL.

7. Defendant TransUnion Interactive, Inc. ("TU Interactive") is a Delaware corporation with its principal place of business in Chicago, IL. It is a wholly-owned subsidiary of Trans Union, LLC.

## Jurisdiction & Venue

8. The court has federal question jurisdiction over the Fair Credit Reporting Act (FCRA) claims pursuant to 15 USC §1681p.

9. Venue is proper in this district. The defendants are subject to personal jurisdiction within this district.

## Description of the Case

10. **Plaintiffs Are Victims of Identity Theft.** Trenton D. Vogus's employment as a firefighter requires him to be away from home for extended periods of time. While in Fresno, he stays at the firehouse or at the residences of co-workers. Because he has no permanent residence in Fresno, Trent kept many of his possessions and files in his vehicle, a 1999 Toyota 4Runner.

11. On the morning of February 1, Trent discovered his vehicle had been stolen from the gated parking lot of a co-worker's apartment building where he spent the night. Some personal identifying information, such as names, addresses, and dates of birth, of Trent, his wife and their four minor children was inside the vehicle. This information was contained on a state employee human resources/ health insurance document that was inside the stolen truck. Also, copies of Trent's resume were inside the vehicle.

12. Trent immediately reported the vehicle as stolen to the Fresno Police Department.

13. Plaintiffs' investigation revealed that the thief or thieves who stole plaintiff's truck also stole plaintiffs' identity.

14. Trent knew that his identity had been stolen when he received an adverse action letter on February 22, 2013, from Capital One/Best Buy. Trent immediately called Experian, Equifax and Trans Union to place fraud alerts on his credit files. The plaintiff Racquel Vogus realized her identity had been stolen on March 1, 2013, when she received a call from the fraud department of Citibank/Sears. The representative said that two women had gone to the Sears store in Fresno and had requested a credit card in their names claiming they were authorized users on the account. The Citibank representative also said that on February 28, 2013, someone called Citibank's 800 number and provided the last four digits of Racquel Vogus' social security number in order to gain access to the account. Citibank gave them access to the account as authorized users. At the caller's request, Citibank changed the telephone number and address on the account. On March 1, 2013, the two fraudsters went to a Sears store in Fresno and asked for a shopping pass on Racquel's account. About 20 minutes later, Citibank cancelled the pass due to "flagged information." Racquel placed an initial fraud alert with all three credit bureaus on the night of March 1st over the phone via their automated fraud alert systems. On March 2, 2013, the fraudsters applied for a J.C. Penney/GE Capital account under Racquel's name and information. On March 4, 2013, the fraudsters tried to open a

Citibank/Home Depot credit card online using Racquel's information. The application was rejected because the address given did not match plaintiffs' home address. On March 7, 19 and 20, 2013, the fraudsters attempted to gain access to plaintiffs' Kohl's account succeeding once even though Kohl's had put special protection on the account.

15. On March 5, 2013, plaintiffs contacted defendants TU, Experian and Equifax and arranged for security freezes be put on their credit reports.

16. On March 6, 2013, plaintiffs were alerted via Lifelock, a credit monitoring service to which plaintiffs subscribed, that someone was attempting to set up an account with Verizon using Racquel's name, social security number, and date of birth. Plaintiff Racquel Vogus contacted Verizon; a representative said an account was opened in her name and a phone number assigned to her even though plaintiffs had security freezes and fraud alerts in place at TU, Experian and Equifax.

17. **Problems with Quizzle & Experian.** On March 1, 2013, plaintiffs reviewed copies of their Experian credit reports that included inquiries from Quizzle although they had never heard of Quizzle.

18. Plaintiffs' investigation revealed that the only reason Quizzle's inquiries appeared on plaintiffs' Experian credit reports was that the identity thieves were using Quizzle to access plaintiffs' Experian credit reports. The fraudsters obtained plaintiffs' Experian credit reports, which included plaintiffs' personal identifying and account information. Using this information, the fraudsters were able to call plaintiffs' creditors to change addresses, passwords, and to add authorized users.

19. Quizzle's website advertises that anyone can obtain a full Experian credit report with "no credit card or social security number required." All that Quizzle requires is a name, address, and date of birth to get an Experian credit report. According to Experian's website, Quizzle is a partner in the business of selling credit reports and related products and services.

20. On March 2, 2013, Racquel talked to "Ian," a Quizzle representative. Plaintiff asked why Quizzle's inquiries appeared on their credit reports; Ian said someone had opened an account

with Quizzle and obtained plaintiffs' credit reports. Ian refused to disclose the email of the person who obtained the reports or to block persons from obtaining plaintiffs' credit reports.

21. On March 4, 2013, Racquel contacted Quizzle again to ask that the fraudsters not be allowed to monitor her credit or her husband's credit. "Derek," the Quizzle representative said that Quizzle had shut down the services it was providing to the fraudsters, but that if someone tried to obtain plaintiffs' Experian credit reports using a different email address, they could do so because "Quizzle would have no way of knowing it was not [plaintiffs]."

22. On April 8th, 2013, plaintiffs mailed, certified return receipt, a letter to Experian stating they were victims of identity theft and that the fraudsters had signed up for several credit monitoring services, including ConsumerInfo.com. Plaintiffs asked that Experian stop allowing their information to be dispersed via their credit monitoring service, Consumerinfo.com. The letter was returned to plaintiffs unsigned on April 12th, 2013. Racquel contacted Experian and asked why the letter was returned. Racquel was instructed to fax the information to Experian via their emergency fax number. Racquel did fax the letter and information. Also, Racquel mailed the information again to Experian. After faxing the information, Racquel called Experian and the representative confirmed they received the letter and attached information. To date, Experian has not responded.

23. On April 8, 2013, plaintiffs sent a letter to Quizzle stating they were victims of identity theft and that Quizzle should take steps to prevent any future access to plaintiffs' credit reports through Quizzle. Quizzle failed to respond.

24. **Problems with ConsumerInfo.com and Experian.** The fraudsters obtained plaintiff Trenton Vogus's Experian credit information on February 4, 2013, by posing as him. On March 4, 2013, plaintiff Racquel Vogus talked to a ConsumerInfo.com representative about the fraudster's access to her husband's credit files explaining that they were victims of identity theft and that the fraudsters were using ConsumerInfo.com to access his credit files. Representatives of

ConsumerInfo.com canceled the account opened by the fraudsters, but admitted that the fraudsters could open a new account using a different email address.

25. After canceling the account opened on February 4, 2013, ConsumerInfo.com allowed the fraudsters to open another account under Trenton's name. ConsumerInfo.com also allowed the fraudsters to open an account under Racquel's name even though she had warned ConsumerInfo.com the fraudsters were likely to do so.

26. On March 6, 2013, Racquel Vogus talked to "Brandi," a representative of ConsumerInfo.com and "Ms Sheffield" of Experian during a 3-way telephone call about the fraudsters being able to access plaintiffs' Experian credit reports. Ms Sheffield confirmed to Brandi that Plaintiffs are victims of identity theft and Experian had all of the necessary documents in their files, such as police reports, etc. Mrs. Sheffield said there was nothing she could do regarding the monitoring service. Brandi spoke with her supervisors and returned to the phone stating they don't have steps in place to prevent something like this. The representatives essentially said there was nothing they could do.

27. On May 10, 2013, ConsumerInfo.com sent plaintiffs a letter stating they had received their request to dispute information on their credit report. ConsumerInfo.com responded with a letter that states plaintiffs sent the dispute information in error because ConsumerInfo.com is not a credit reporting company.

28. **Problems with TransUnion Interactive, Inc. and Trans Union.** Defendant TransUnion Interactive offers consumers a credit monitoring service.

29. Beginning February 15, 2013, through April 4, 2013, plaintiffs' Trans Union credit reports show a series in Account Review Inquiries from defendant TransUnion Interactive. The inquiries dated March 9 and 16, 2013, state the inquiries were for credit monitoring. Plaintiffs did not order credit monitoring services from TransUnion Interactive nor did plaintiffs contact TransUnion

*Racquel L. Vogus and Trenton D. Vogus v Experian Info Solutions et al*, ND Case No.
Complaint and Jury Demand                                                                                           6

Interactive for any other services.

30. On March 4, 2013, Racquel talked to "Lolly," a TransUnion Interactive employee to complain that fraudsters were signing up with various credit monitoring services, including TransUnion Interactive, using plaintiffs' personal information, in order to gain access to plaintiffs' credit reports. Armed with the credit reports, the fraudsters would be able to answer prospective creditors' security questions.

31. On March 18, 2013, Racquel talked to "Phil," a TransUnion Interactive employee to explain that plaintiffs had never asked for any services from his company. Racquel asked what permissible purpose existed for someone else to access their accounts; he had no answer.

32. On April 1, 2013, Racquel contacted TransUnion Interactive again and spoke to "Bryan," a supervisor. Racquel explained she and her husband were victims of identity theft and that their credit reports were accessed by fraudsters. Racquel asked that TransUnion Interactive stop releasing credit reports to others. Bryan said to send a letter concerning the inquiries.

33. On April 8, 2013, plaintiffs sent a letter to TransUnion Interactive in which they again explained that fraudsters had accessed their credit reports using its service. Plaintiffs asked that TransUnion Interactive stop providing credit information to the fraudsters and that the fraudulent inquiries should be removed from their Trans Union credit report.

34. In a letter dated April 12, 2013, TransUnion Interactive responded with a non-responsive form letter. Upon receipt of the letter, on April 16, 2013, Racquel called TransUnion Interactive reaching employee "Lisa." After Racquel Vogus restated her requests, Lisa said "she could not remove the inquiries and that she could find no reason for the inquiries."

35. **Plaintiffs' Damages.** As a result of defendants' conduct, defendants' violations of the FCRA caused plaintiffs actual damages. Defendants' disclosure of their consumer reports to the fraudsters violated the privacy interests of plaintiffs by exposing their personal and confidential

information to use and abuse by persons who had no legal right to obtain or use that information. Plaintiffs have suffered actual damages in the form of (a) lost credit opportunities and in particular the inability to buy a house, b) harm to credit reputation and credit scores, and (c) emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration. Plaintiffs will continue to suffer the same for an indefinite time in the future, all to their great detriment and loss.

**Duties of Defendants Experian and Trans Union under the FCRA—Applicable to Defendants Trans Union and Experian**

36. **Permissible Purpose.** Section 1681e(a) of the FCRA provides that every consumer reporting agency shall maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under section 1681b of the FCRA. These procedures include requiring prospective users of the information to identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.

37. Section 1681e(a) further provides that every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report.

38. Section 1681e(a) also provides that no consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

39. **Reasonable Investigation of Disputed Information.** Section 1681i(a)(1) provides that if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or delete the item from the file within 30 days of receiving the consumer's dispute notice.

40. In conducting its reinvestigation of disputed information in a consumer report, the credit reporting agency is required to review and consider all relevant information submitted by the consumer.

41. **Reasonable Procedures to Assure Maximum Possible Accuracy.** Section 1681e(b) requires consumer reporting agencies to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about who the report relates.

**Duties of Resellers—Duties of Defendants Trans Union Interactive, Quizzle, and ConsumerInfo.com under the FCRA**

42. Defendants Trans Union Interactive, Quizzle, and ConsumerInfo.com are resellers of credit information. As such, they are consumer reporting agencies under the FCRA and have the same duties and responsibilities as Trans Union and Experian, with a few exceptions not applicable to this action.

43. Under the FCRA, resellers must establish procedures to assure maximum possible accuracy of the consumer reports they sell.

44. **Reseller's Duty to Investigate.** Resellers that receive a notice from a consumer about an item in the reseller's report must investigate the item to determine whether or not it is incomplete or inaccurate as a result of some act or omission of the reseller. If the reseller determines that the information was its responsibility, the reseller must delete or correct the information in the consumer's report within 20 days. If the information is the result of someone else's act or omission, the reseller must convey the consumer's notice of the dispute to the consumer report agency that provided the information.

45. **Resellers May Sell Reports Only for Permissible Purposes.** Resellers must maintain reasonable procedures designed to ensure that information that it resells is used only for permissible purposes. These procedures include a requirement that each person to whom information is resold and who provides the report to another must identify each end-user, certify the purpose for which the

information will be used, and certify that the information will be used for no other purpose. Reasonable efforts to verify these certifications and the identity of each end-user must be made before reselling a report.

46. Resellers may not procure a report from a credit reporting agency without disclosing to the credit reporting agency the identity of the end-user of information in the report and each permissible purpose for which the information is furnished to the end-user. This is to prevent what happened in this case; fraudsters obtained plaintiffs' credit reports using the resellers as intermediaries.

47. **Resellers Must Block Identity-Theft Information.** If a consumer notifies a reseller that a report contains identity-theft information, the resellers must block the report from the subsequent use by the resellers. Consumers may enforce the blocking requirements under the FCRA.

**First Claim: Violations of the Fair Credit Reporting Act—Against Trans Union**

48. Plaintiffs incorporate by reference ¶¶ 1 through 41.

49. Trans Union violated Section 1681(e)(a) having (a) failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under Section 1681b. Trans Union also violated Section 1681(e)(a) having had no reasonable grounds for believing that the consumer reports would be used by the persons who obtained plaintiffs' reports for a purpose listed under Section 1681b.

50. Trans Union violated Section 1681b of the FCRA having had no reason to believe that the persons who obtained plaintiffs' credit reports intended to use its credit reports in connection with a "credit transaction" involving the consumers on whom the report was furnished.

51. Within the two years preceding the filing of this complaint, plaintiffs notified Trans Union of inaccuracies contained in its reports and asked it to correct the inaccuracies. Trans Union failed to conduct a reasonable reinvestigation of the inaccuracies that plaintiffs disputed.

52. Trans Union failed to review and consider all relevant information submitted by

plaintiffs.

53. Trans Union failed to employ and follow reasonable procedures to assure maximum possible accuracy of plaintiffs credit reports, information and file in violation of 15 USC § 1681e(b).

54. As a result of the above-described violations of § 1681i and § 1681e(b), plaintiffs sustained damages.

55. Defendant Trans Union's violations of the FCRA were willful and therefore plaintiffs are therefore entitled to also seek statutory and punitive damages.

**Second Claim: Violations of the Fair Credit Reporting Act—Against Experian**

56. Plaintiffs incorporate by reference ¶¶ 1 through 41.

57. In its arrangements with defendants Quizzle and ConsumerInfo.com, Experian violated Section 1681(e)(a) having (a) failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under Section 1681b and Section 1681(e)(a) having had no reasonable grounds for believing that the consumer reports would be used by the persons who obtained plaintiffs' reports for a purpose listed under Section 1681b. Experian also violated Section 1681b of the FCRA having had no reason to believe that the persons who obtained plaintiffs' credit reports intended to use its credit reports in connection with a "credit transaction" involving the consumers on whom the report was furnished.

58. Within the two years preceding the filing of this complaint, plaintiffs notified Experian of inaccuracies contained in its reports and asked it to correct the inaccuracies. Experian failed to conduct a reasonable reinvestigation of the inaccuracies that plaintiffs disputed.

59. Experian failed to review and consider all relevant information submitted by plaintiffs.

60. Experian failed to employ and follow reasonable procedures to assure maximum possible accuracy of plaintiffs credit reports, information and file in violation of 15 USC § 1681e(b).

61. As a result of the above-described violations of §§ 1681b, 1681i and 1681e(b), plaintiffs sustained damages.

62. Defendant Experian's violations of the FCRA were willful and therefore plaintiffs are therefore entitled to also seek statutory and punitive damages.

**Third Claim: Violations of the Fair Credit Reporting Act—Against Quizzle**

63. Plaintiffs incorporate by reference ¶¶ 1 through 62.

64. Quizzle failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under section 1681b, including procedures requiring prospective users of the information to identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.

65. Quizzle violated § 1681b by furnishing Experian consumer reports to persons with respect to whom Quizzle did not have reasonable grounds for believing that the reports would only be used for permissible purposes.

66. Quizzle violated Section 1681(e)(a) having had no reasonable grounds for believing that the consumer reports would be used by the persons who obtained plaintiffs' reports for a purpose listed under Section 1681b.

67. Quizzle violated Section 1681b having had no reason to believe that the persons who obtained plaintiffs' credit reports intended to use the credit reports in connection with a "credit transaction" involving the consumers on whom the report was furnished.

68. Quizzle failed to block reports that contained identity-theft information as required by § 1681c-2(d)(2).

69. After plaintiffs notified Quizzle of inaccuracies contained in its reports and asked it to correct certain inaccuracies, Quizzle failed to conduct a reasonable reinvestigation of the inaccuracies.

70. Quizzle failed to review and consider all relevant information submitted by plaintiffs.

71. Quizzle failed to employ and follow reasonable procedures to assure maximum possible accuracy of plaintiffs' credit reports, information and file in violation of Section 1681e(b).

72. As a result of the above-described violations of §§ 1681b, 1681i and § 1681e(b), plaintiffs have sustained damages.

73. These defendants' violations of the FCRA were willful and therefore plaintiffs are therefore entitled to also seek statutory and punitive damages.

**Fourth Claim: Violations of the Fair Credit Reporting Act—Against ConsumerInfo.com**

74. Plaintiffs incorporate by reference ¶¶ 1 through 62.

75. ConsumerInfo.com failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under section 1681b, including procedures requiring prospective users of the information to identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.

76. ConsumerInfo.com violated § 1681b by furnishing Experian consumer reports to persons with respect to whom ConsumerInfo.com did not have reasonable grounds for believing that the reports would only be used for permissible purposes.

77. ConsumerInfo.com violated Section 1681(e)(a) having had no reasonable grounds for believing that the consumer reports would be used by the persons who obtained plaintiffs' reports for a purpose listed under Section 1681b.

78. ConsumerInfo.com violated Section 1681b having had no reason to believe that the persons who obtained plaintiffs' credit reports intended to use it's the credit reports in connection with a "credit transaction" involving the consumers on whom the report was furnished.

79. ConsumerInfo.com failed to block reports that contained identity-theft information as required by § 1681c-2(d)(2).

80. After plaintiffs notified ConsumerInfo.com of inaccuracies contained in its reports and asked it to correct certain inaccuracies, ConsumerInfo.com failed to conduct a reasonable reinvestigation of the inaccuracies.

81. ConsumerInfo.com failed to review and consider all relevant information submitted by

plaintiffs.

82. ConsumerInfo.com failed to employ and follow reasonable procedures to assure maximum possible accuracy of plaintiffs' credit reports, information and file in violation of Section 1681e(b).

83. As a result of the above-described violations of §§ 1681b, 1681i and § 1681e(b), plaintiffs have sustained damages.

84. These defendants' violations of the FCRA were willful and therefore plaintiffs are entitled to also seek statutory and punitive damages.

**Fifth Claim: Violations of the Fair Credit Reporting Act—Against TransUnion Interactive**

85. Plaintiffs incorporate by reference ¶¶ 1 through 62.

86. Trans Union Interactive failed to maintain reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under section 1681b, including procedures requiring prospective users of the information to identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose.

87. Trans Union Interactive violated § 1681b by furnishing Trans Union consumer reports to persons with respect to whom Trans Union Interactive did not have reasonable grounds for believing that the reports would only be used for permissible purposes.

88. Trans Union Interactive violated Section 1681(e)(a) having had no reasonable grounds for believing that the consumer reports would be used by the persons who obtained plaintiffs' reports for a purpose listed under Section 1681b.

89. Trans Union Interactive violated Section 1681b having had no reason to believe that the persons who obtained plaintiffs' credit reports intended to use the credit reports in connection with a "credit transaction" involving the consumers on whom the report was furnished.

90. Trans Union Interactive failed to block reports that contained identity-theft information as required by § 1681c-2(d)(2).

91. After plaintiffs notified Trans Union Interactive of inaccuracies contained in its reports and asked it to correct certain inaccuracies, Trans Union Interactive failed to conduct a reasonable reinvestigation of the inaccuracies.

92. Trans Union Interactive failed to review and consider all relevant information submitted by plaintiffs.

93. Trans Union Interactive failed to employ and follow reasonable procedures to assure maximum possible accuracy of plaintiffs' credit reports, information and file in violation of Section 1681e(b).

94. As a result of the above-described violations of §§ 1681b, 1681i and § 1681e(b), plaintiffs have sustained damages.

95. These defendants' violations of the FCRA were willful and therefore plaintiffs entitled to also seek statutory and punitive damages.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment as follows:

1. Actual, statutory and punitive damages;
2. Injunctive relief;
3. Costs and attorney's fees; and
4. Such other relief as the Court may deem proper.

Dated: May 15, 2013.

ANDERSON, OGILVIE & BREWER LLP

By /s/ Mark F. Anderson
Mark F. Anderson
Attorney for Plaintiffs

DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues.
Dated: May 15, 2013.

ANDERSON, OGILVIE & BREWER LLP

By /s/ Mark F. Anderson
Mark F. Anderson, Attorney for Plaintiffs